## No. 612
### OLMSTED HOTEL CO. v. STATE ex
### No. 18736. Supreme Court

Pending on motion of Hotel Co. to certify record.

**1283. WORKMEN'S COMPENSATION—When does state liability attach?**

This case involves the question whether. 1465-74 GC. as amended (103 OL. 82) is in
(Continued on Page 601)

---

## CURRENT OHIO COURT of APPEALS CASES
### Weekly Advance Abstract Opinions

---

1. As the statute 12603 GC. does not in any way refer to the manner of operating the machine other than in respect to the speed at which it may be driven, the court committed error in making the statute apply to the manner of operating machines and not to the speed of the car.

Attorneys—Dustin, McKeehan, Merrick, Arter & Stewart, for Braden; Holding, Masten, Duncan & Leckie, for LaMotte.

---

No. 614
FRANKEL v. CLEVELAND BAKERIES CO.
Ohio Appeals, 8th Dist., Cuyahoga county
No. 5165. Decided June 9, 1924
**114. ATTORNEY AND CLIENT—1. Compensation of corporation, held limited to service not part of official duties.**

**2. Services as corporate officer held not compensatable as attorney.**

ROBERTS, J.      Epitomized Opinion
Published Only in Ohio Law Abstract

Frankel & Frankel, a Cleveland law firm, brought an action on account for attorney fees and services rendered on behalf of de-

fendant. Plaintiffs claimed that there was a balance due it of $2,542.99. The evidence disclosed that plaintiffs were officers of the defendant corporation; that they had taken part in the promotion, development and supervision of the Company. The Company claimed that these services were performed for the defendant as officials thereof, and not as attorneys, and there had been no contract for compensation as officials, and they were not entitled to pay. The jury returned a verdict for defendants, whereupon plaintiffs prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. As the general charge of the court was correct, and as the jury clearly understood throughout the trial that the plaintiffs could recover only for services as attorneys and not for services rendered simply as directors or officers, the mere fact that one erroneous special request was given did not mislead the jury to such an extent as to constitute prejudicial error.

2. In view of the fact that the evidence disclosed that most of the services rendered were not services ordinarily performed by attorneys, but were matters within the scope of the duties of the officers of the Company, it cannot be said that the verdict and judgment of the lower court was manifestly against the weight of the evidence.

Attorneys—Morris Berrick, for Frankel; White, Cannon & Spieth, for Bakeries Co.; all of Cleveland.

---

No. 615
FORD-McCASLIN CO. v. EUCLID WINDSOR CO.
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5063. Decided May 26, 1924
**313. CORPORATIONS—1. Board of directors exercise conduct and control of business and property of corporations.**

**2. Burden on corporation to rebut presumption that officer conducting business has necessary corporate power.**

SULLIVAN, J.      Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action to recover $2,500 due under a contract. In November, 1919, a contract was entered into between the Ford-McCaslin Co. and the Euclid Windsor Co. to manage and supervise a building known as the Stuyvesant Building, which was then being erected at 4913 Euclid avenue. Later on the Windsor Company sold the building to the Stuyvesant

Motor Co. Negotiations were then started to cancel the written agreement. After some correspondence on agreemnt was entred into whereby the plaintiff was to pay the defendant $2,500 in cash, 60 shares of preferred stock and 10 shares of common stock in the Stuyvesant Motor Co., such stock to be issued in the name of one Hudson.

The letters containing such stock were signed by one Jacobs, vice-president of the Euclid Windsor Co. The stock was delivered, but the money was never paid over. After a considerable period of time this action was brought. At the close of the plaintiff's evidence the court directed a verdict for the defendant upon the ground that there was no evidence to show that the vice-president was athorized to make such an agreement for the Euclid Windsor Co. The plaintiff prosecuted error. In reversing the judgment of the lower court, the Court of Appeals held:

1. The corporate powers, business and property of corporations ought to be exercised, conducted and controlled by the Board of Directors.

2. The presumption is that the officer of the corporation acted not without authority from the corporation, but that he acted with the authority of the corporation because the character and contents of the instruments of writing bear the stamp of corporate authority, and the burden rested upon the Company to prove lack of authority, especially in the fact of partial performance of the cancellation contract.

Attorneys—Tolles, Hogsett, Ginn & Morley, for Ford-McCaslin Co.; Guthery, Guthery, Binyon & Williams, for Euclid Company; all of Cleveland.

---

No. 616

LICHTWADT v. LICHTWADT

Ohio Appeals, 1st Dist., Hamilton County
No. 2292. Decided Jan. 28, 1924

413. DIVORCE AND ALIMONY—1. Meaning of term "wilful absence."

2. Where parties agree to live apart, wilful absence is waived by both as a ground for divorce.

BUCHWALTER, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

August Lichtwadt filed an action in the Hamilton Common Pleas praying for a divorce from Jane Lichtwadt upon the grounds of wilful absence. The defendant denied the charge. In 1919 the defendant deserted the plaintiff and did not live with her thereafter. However, in 1919 Jane filed an action against the plaintiff for alimony, and after various negotiations in 1920 an agreement was entered into in regard to the division of property, which also contained a certain stipulation that the parties should live separate and apart from each other. Twenty-five months after this agreement was entered into, August brought this action for a divorce The Common Pleas gronted the divorce, whereupon Jane prosecuted error. In reversing the decision of the lower court, the Appeals held:

1. Wilful absence means just what the term indicates, not absence by consent or agreemen by collusion, or the result of an accident, but by a voluntary act on the part of the one going away with an intent to repudiate the marital duty and obligations.

2. The making of a separate agreement with a provision for the continuance of such separation amounts to such a consent to an absence as to deprive either party from getting a divorce from the other on the grounds of wilful absence.

Attorneys—Pogue, Hoffheimer & Pogue and Walter M. Locke, for Jane Lichwadt; Waite, Schindel & Bayless and Herbert Schaffer, for August; all of Cincinnati.

---

No. 617

LEPENE v. KAPLAN et al

Ohio Appeals, 8th Dist., Cuyahoga County
No. 5112. Decided June 9, 1924

639. INJUNCTIONS—Equitable relief from record of deed for alleged misrepresentation in obtaining same, denied.

FARR, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

This is an action for an injunction to restrain Anna Kaplan and others from recording a quit-claim deed. In May, 1923, Lepene purchaset a lot in the city of Cleveland and in June, 1923, she executed and delivered a quit-claim deed covering her interest in the said premises, to Anna Kaplan. The plaintiff claimed that one Kaplan had agreed to furnish the sum of $1,000 to her for the purpose of financing the purchase and that later and after she had issued the check for said sum, Kaplan demanded that he be given the right to share in the profits of the transaction.

Kaplan claimed that he never made such an agreement, but that a contract in writing was made between the plaintiff and defendant, Anna Kaplan, in pursuance of which Anna Kaplan paid the plaintiff the sum of $650, and that she was to take charge of the property and after making certain disbursements from the proceeds of the rentals the deed was signed. A temporary restraining order was

## STATE COURT OF APPEALS—Continued

granted, but upon final hearing the injunction was denied. An appeal was perfected in the Court of Appeals. In refusing equitable relief, the plaintiff was not entitled to an injunction.

Attorneys—S. A. Grossner, for Lepene; A. A. Cartwright and S. A. Davies, for Kaplan; all of Cleveland.

---

### No. 618
### McDONALD et al v. SEIDMAN
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5230. Decided June 9, 1924

679. JUDICIAL SALES—Confirmation of an order set aside where purchaser is misled as to outstanding indebtedness against property.

VICKERY, P. J.
Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action brought by King to marshall a lien upon certain property composed of two pieces which were separately appraised, one for $30,000 and the other for about $3,000. The sale was duly advertised, appraised and the small parcel purchased by Seidman at sheriff's sale for $2,700. On this smaller parcel there was a first mortgage held by the Federal Loan Company to the full knowledge of B. M. McDonald. The Federal Loan Company was not a party to the suit, although this mortgage was something like $1,700 at the time the property was purchased at sheriff's sale. Upon motion of the sheriff the sale of this parcel was confirmed as to Seidman, although she had not paid the purchase money.

Shortly thereafter she filed a motion to set aside the sale on the ground that she had purchased the property, as she supposed, free and clear of encumbrance, while really there was $1,700 against the property. Subsequently a petition to set aside the same was filed and the sale set aside. No motion was filed to set aside the sale to King, who purchased the larger parcel, but McDonald in his answer set up that if the sale to Seidman was set aside, the sale to King should also be set aside. Error was then prosecuted to the Court of Appeals. In affirming the judgment of the lower court, this Court held:

1. As the purchaser was misled in buying this property in that she was not aware of the mortgage indebtedness, the order of confirmation of the sale should be set aside, as any other ruling would be using the court to perpetrate a fraud upon the purchaser.

Attorneys—Wm. H. Chopmon, for McDonald et al; John A. Alburn, for Seidman; all of Cleveland.

---

### No. 619
### NEFFLE v. CLEVE. & SAND. BREW. CO
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5198. Decided May 26, 1924

703. LANDLORD AND TENANT—Lessor not liable to sub-tenant for collapse of outside stairwoy in absence of concealment or agreement to repair, or statutory violation.

VICKERY, P. J.
Epitomized Opinion
Published Only in Ohio Law Abstract

Jeanette Neffle brought an action against the Cleveland & Sandusky Brewing Co. and one Louis Voss to recover damages for an injury resulting to her by reason of a stairway collapsing on the premises owned by the Brewing Co., precipitating her to the cement walk below. The premises were leased to Louis Voss upon a tenancy from month to month. Neffle was a sub-tenant of Voss. Later Voss advised the Company that the builing was in need of certain repairs. Subsequently a man from the Brewing Company made a few minor repairs on the stairway and siding.

The stairway was separated from the building and a few nails were put into it to hold it. Fifteen months later this stairway collapsed while plaintiff, a sub-tenant, was using it. The plaintiff then brought an action against Voss and the Brewing Co. At the close of the evidence the court directed a verdict in fovor of the Brewing Co., whereupon a juror was withdrawn by Voss and the case was continued as to him. Error was prosecuted to the Court of Appeals. In affirming the judgment of the lower court, the Court of Appeals held:

1. A lessor of a building is not liable to the lessee or sub-lessee or others lawfully on the presimses for its condition in the absence of actual or constructive concealment or of any agreement of the violation of a duty imposed by statute.

2. As there was no evidence to show any agreement or statutory liability on the part of the lessor, the lessor was not liable under the facts in this case.

Attorneys—Payer, Winch, Minshall & Karch, for Neffle; Boyd, Cannon, Brooks and Wickham and M. W. Kastriner, for Brewing Co.; all of Cleveland.

---

### No. 620
### AKINS v. NEWMAN
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5129. Decided June 9, 1924

707. LEASES—1. Parol evidence not admissible to vary terms of lease.

## 2. Lease not rendered void by fire that does not destroy portion leased.

POLLOCK, J. Epitomized Opinion
Published Only in Ohio Law Abstract

Newman brought an action against Akins in the Municipal Court of Cleveland for rent of a certain portion of a building located on Euclid avenue. A written lease was signed by the parties which called for a rental of $4,200 yearly, payable in equal monthly installments of $350 per month. The palintiff claimed that there were two months' rent due which was not paid by defendant. The defendants claimed that the written lease did not state the agreement between the parties, as it should have stated that the defendant leased not only a part of the ground floor but also a portion of the basement. The defendant also claimed that part of the building was destroyed by fire and that the plaintiff failed to repair the same. The trial resulted in a verdict in favor of plaintiff, whereupon defendant prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. Parol evidence is not admissible to vary the written terms of a lease where there is no ambiguity in the lease as to the property included therein.

2. As the evidence failed to show that there was any substantial damage caused to the premises included within the written lease as a result of the fire, the defendant was not entitled to a recission or cancellation of the same.

Attorneys—A. Frank Counts, for Akins; Mooney, Hahn, Loeser and Keough, for Newman; all of Cleveland.

---

## No. 621
## BOLTON v. CLEVELAND (City)
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5285. Decided June 2, 1924

921. PHYSICIANS AND SURGEONS—
1. Municipal ordinance requiring physicians to report treatment of patient for gun wound is valid.
2. Requirement held not in violation of privileged communication rule.

VICKERY, P. J. Epitomized Opinion
Published Only in Ohio Law Abstract

Bolton was charged in the Cleveland Municipal Court of violating Sec. 2789 of a Cleveland ordinance, in failing to report he had dressed a gunshot wound for a certain person who, afterwards, it was shown, had been in a hold-up and had shot at a policeman, and who was shot in return. He then went into the office of Dr. Bolton, located in Cleveland, Ohio, and the bullet was extracted from his person. As the doctor failed to report the matter, he was arrested, convicted and fined $50 and costs. Error was prosecuted to the Court of Appeals, where it was claimed that the ordinance was unconstitutional, as it compelled a doctor to testify what he did for his patient and that such transaction was privileged. In sustaining the judgment of the lower court, the Court of Appeals held:

1. The requirement of a city ordinance that a physician who treats a person for a gunshot or wound inflicted by a deadly weapon shall notify the Police Department is a valid exercise of the police power.

2. A municipal ordinance requiring physicians to report gun wounds or wounds inflicted by deadly weapons upon the person of any of his patients does not violate any of the provisions of the law pertaining to privileged communications, as such an ordinance does not require the physician to report as to how the patient received the wound, but to report the mere fact of such an incident.

Attorneys—W. S. Cerrezin, for Bolton; A. Jilek, for City of Cleveland; both of Cleveland.

---

## No. 622
## LADIES' CUTTERS' UNION v. KASSELGERT CO.
Ohio Appeals, 1st Dist., Hamilton County
No. 2114. Decided Feb. 11, 1924

918. PICKETING—1. Picketing held lawful.
2. The carrying of a banner by a picket containing false information held unlawful.

PER CURIAM. Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action brought by the Kassel-Gert Co. to enjoin the Ladies' Garment Cutters' Union of Cincinnati from Carrying a banner in front of its premises. The plaintiff claimed that all of its employes were satisfied with working conditions and wages and that none of plaintiff's employes had struck or left plaintiff's employ. Plaintiff further claimed that the defendant had conspired to injure the plaintiff's business because the employes of said company did not belong to any trade union, and also claimed that the defendant had caused a banner to be carried in front of the plaintiff's place of business, which, in effect, stated that there was a strike on at the plaintiff's company.

The plaintiff further complained of the fact that the defendant had maintained a large number of pickets in front of its place of business for the purpose of intimidating employes. Plaintiff prayed for an injunction restraining the defendant from picketing, other than in such numbers as might be fixed by the court; from attempting to cause plaintiff's employes to leave; from intimidating and threatening said employes; and from carrying

## STATE COURT OF APPEALS—Continued

the banners with the words as stated. The trial court entered a permanent restraining order prohibiting picketing by defendant except to the extent of two pickets and also enjoined the carrying of the banner. Error was prosecuted to the Court of Appeals. In sustaining the judgment of the lower court, the Court of Appeals held:

1. Picketing a plant of an employer by strikers during a strike, and peaceful discussion with and persuasion of employes to leave their employment, which under the terms of their contract, is terminable at will, and the peaceful persuasion of men applying for work not to work for that particular employer, if unaccompanied by physical violence, abuse, intimidation, or any form of coercion or duress, direct or indirect, are not unlawful, and cannot be enjoined."

2. Where a labor union pickets a shop of an employer in large numbers and carries a banner stating that a strike exists, which is untrue, an injunction will issue as the carrying of such a banner is unlawful.

Attorneys—Wm. Thorndyke, for the Ladies' Union; H. G. Hightower and Heintz & Heintz, for the Kassel-Gert Co.; all of Cincinnati.

---

No. 623

DENLY, Trustee, v. WHEELER et al

Ohio Appeals, 8th Dist., Cuyahoga County

No. 5089.   Decided June 2, 1924

1271.   WILLS—1. Equivocal words in will construed to prevent intestacy.

2. Words in will, given ordinary construction unless different sense is clearly apparent.

3. "Heirs" comprehends heirs designated by court order.

LEVINE, J.                    Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action for a construction of a will brought by Denly, trustee, under the will of Caroline Welch, deceased. Caroline Welch died in 1905, five years after the execution of her will. Her nephew, Harry Sprague, had lived with her previous to his marriage, which occurred in 1900. During the life time of Welch one child was born to him, but it only lived a few hours and Welch himself died childless in 1918, leaving his widow surviving him. In 1913 Welch, by proper proceedings in the Probate Court of Ashtabula county, O., caused Fielder Sanders to be designated as his heir under 8598 GC.

The provision of the will which the Court was asked to construe read: "To Harry Sprague the use and income during his natural life of another one-third of such remainder and the use and income of the said one-third

to Elizabeth Sprague . . . and after the death of both . . . the principal sum of said one-third remaining shall go to the heirs of said Harry Sprague."

It was claimed by Ellen Wheeler that the word "heirs" was used by the deceased in the sense of "children," and the devise of the one-third residue of the estate lapsed as to the heirs of Harry Sprague and descended to the heirs of the testatrix. Fielder Sanders claimed that the word "heirs" was used in the technical sense which included designated heirs and therefore, he was entitled to the remaining one-third. An appeal was taken from the decision of the Common Pleas Court, and in rendering a decree for Fielder Sanders, the upper court held.

1. It is a settled rule of construction that a testatrix is never presumed to intend to die intestate, as to any part of her estate to which her action seems to have been directed; and a Court of equity will put such a construction upon equivocal words as to prevent such a result.

2. Words in a will are to be understood according to their ordinary, natural and legal signification unless it is manifest from the context or from other provisions in the will that the testatrix has used them in a different sense and unless the sense in which they were used is clearly apparent.

3. As it is the duty of the court where the words used in the will are equivocal in character, to give the language of the will of the testatrix that construction that will prevent intestacy, the word "heirs" was intended by the testatrix to mean the person or persons appointed by law to succeed to the estate in case of intestacy; therefore the designated heir of Sprague, to-wit, Fielder Sanders, was entitled to one-third of the residue of the estate.

contravention of the constitution of Ohio and of the U. S.

The State recovered a judgment in the Cuyahoga Common Pleas June 30, 1924. In the petition the relator, the Attorney General, alleged that on and before July 7, 1920, the Olmsted Hotel Co. was a corporation, engaged in the hotel business at Cleveland, and operated the Winton Hotel and that prior to that date it had failed to comply with the Workmen's Compensation Act, 1465-69 GC., and prior thereto had in its employ five or more workmen or operatives required in its business.

That on or about that day, James Tallerico, an employe, while in the course of said employment, was struck by a descending elevator, his injuries resulting in his death, leaving nephews, Anyelo and Joseph Tallercio, aged respectively 12 and 10 years, claiming to be partially dependent upon him for support. Frank Tallerico, as their guardian, had the Attorney General, through 1765-74 GC. bring an action in his official capacity for the Industrial Commission, on behalf of Frank Tallerico, Guardian, setting up that he had elected to pursue his employe's remedy for the injury by making application to the Commission for an adjustment of compensation.

On March 8, 1921, the Commission found that there was due to Frank Tallerico, as said Guardian, $2080. It was further alleged that a copy of the finding, on March 8, 1921, was served by mail on the Hotel Co., and it had failed to pay the same. It therefore asked for a judgment of the amount, plus a penalty of 50 per cent for failure to pay within ten days.

The Hotel Co. answered admitting the injury, death and guardianship, and setting up that it first began the operation of the Winton Hotel and employer of five operators, July 1, 1920. That subsequent to the filing of the application before the Industrial Commission, and in due time, it had filed therein its proper answer, and that until a long time after the death of Tallerico, on July 7, it had no knowledge of what amount of premium was chargeable by the Commission against it for the first six months' period.

The agreed statement of facts filed as a part of the bill of exceptions shows that on the date of the injury the Hotel Co. had not elected to pay compensation, etc., directly, under 1465-69 GC., but that not until about Sept. 4, 1921, had it been a subscriber to the state insurance fund. Also that on Sept. 24 the company received advice from the commission that its first premium for six months was $2046, and that the insurance would be in full force and effect, and date from the first week day after the payment had been received by the Treasurer of State. This amount was forwarded to the Commission Oct. 16, 1920, and entered to the credit of the company, this period the date of the inquiring.

It is the contention of the Hotel Co. that the Commission, at the time it made the award against it of $2080, knew it became an employer July 1, 1920, and had before it the company's pay roll for the period., and that its payment of $2046 assessment covered the Tallerico claim, which should be paid from the state fund.

The Commission gave judgment against the Hotel Co. for $2080 (plus the 50 per cent penalty). The Cuyahoga Appeals affirmed the judgment of the Common Pleas.

Attorneys—Calfee, Fogg & White and O. A. Dickey, Cleveland, for Hotel Co.; C. C. Crabbe, Atty Gen., and R. R. Zurmehly, Columbus, and David E. Green, Cleveland, for the State.